AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>One Google account, one Instagram account, one<br>Snapchat account, and one Tumblr account, as further<br>described in Attachments A-1, A-2, A-3 and A-4 | )<br>)<br>)<br>)<br>)<br>)    Case No.     MJ18-277 |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
One Google account, one Instagram account, one Snapchat account, and one Tumblr account, as further described in Attachments A-1, A-2, A-3 and A-4

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachments B-1, B-2, B-3, and B-4.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2251 | Sexual exploitation of minors |
| 18 USC 2252(a) | Possession, distribution of child pornography |
| 18 USC 2422(b) | Enticement of minors |

The application is based on these facts:
See Affidavit of HSI Special Agent Jason R. Graeff, attached hereto.

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
      under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Jason R. Graeff
*Printed name and title*

Sworn to before me pursuant to CrimRule 4.1.

Date: 6/14/18

_____
*Judge's signature*

City and state:  Seattle, Washington

U.S. Magistrate Judge Brian A. Tsuchida
*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON )
                               )     ss
COUNTY OF KING )

       I, Jason R. Graeff, being duly sworn on oath, depose and state:

### INTRODUCTION AND AGENT BACKGROUND

       1.     I am a Special Agent ("SA") with the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have held such a position since August 2009. HSI is responsible for enforcing the customs and immigration laws and federal criminal statutes of the United States. I am currently assigned to the Office of the Special Agent in Charge ("SAC"), Seattle, Washington, and am a member of the Child Exploitation Investigations Group. As part of my current duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography and material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have received training in investigating child pornography and child exploitation crimes. I have also had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256(8)). I am a member of the Seattle Internet Crimes Against Children Task Force, and work with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.

       2.     I am submitting this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following:

       (a) a Gmail account "walflowers.r.us@gmail.com" (as further described in Attachment A-1);

       (b) an Instagram account in the name of "wallflowers.r.us" (further described in Attachment A-2);

1

(c) a Snapchat account in the name of "walflowersrus" (further described in Attachment A-3); and

(d) a Tumblr account in the name of "notsure1989" (further described in Attachment A-4).

Collectively, these accounts will be referred to as the "SUBJECT ACCOUNTS"). The SUBJECT ACCOUNTS are suspected to have been utilized by PETER JAMES HUFFERD to send and receive child pornography and to communicate with minors. I request authority to search the SUBJECT ACCOUNTS for the things specified in the related Attachment B (Attachment B-1 applies to Attachment A-1, Attachment B-2 to Attachment A-2, Attachment B-3 to Attachment A-3, and Attachment B-4 to Attachment A-4), for the reasons set forth below.

3.     The warrant would authorize a search, seizure, and forensic examination of the SUBJECT ACCOUNTS, for the purpose of identifying electronically stored data as particularly described in Attachments B-1. B-2, B-3, and B-4, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), 18 U.S.C. § § 2251(a), 2251(c)) (Production of Child Pornography/Sexual Exploitation of Children), and 18 U.S.C. § 2422(b) (Attempted Enticement of a Minor).

4.     The facts set forth in this Application for Search Warrant are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation (including the United States Probation Service (USPO), my review of documents and records related to this investigation and a previous investigation of PETER JAMES HUFFERD, communications with others who have personal knowledge of the events and circumstances described herein, and my training and experience. Because this affidavit is offered for the limited purpose of establishing probable cause, I list only those facts that I believe are necessary to support such a finding. I do not purport to list every fact known to me or others as a result of this investigation.

2

Affidavit of SA Graeff
USAO #2018R00299

## STATEMENT OF PROBABLE CAUSE

### A.  Background of PETER JAMES HUFFERD

5.      In February of 2008, the King County Sheriff's Office (KCSO) and the
United States Veterans Affairs, Office of Inspector General (VA-OIG) initiated a child
enticement investigation.  HSI SA Gabriel Stajduhar reviewed a Complaint filed in
United States District Court as a result of this investigation.  As part of this enticement
investigation, according to the sworn complaint, a VA agent reviewed a Port Angeles
police report from 2003.  In this report, PETER JAMES HUFFERD admitted to officers
that he had chatted with minor females using the name "LisaJones12345."  In 2003,
HUFFERD was convicted of three counts of Possession of Depictions of Minors Engaged
in Sexually Explicit Conduct in Clallam County Superior Court and sentenced to 115
days in custody.

6.      The 2008 enticement investigation began when a 12-year-old female's
father complained that his daughter was having online sexual conversations with a person
known as "Lisa Jones."  According to the complaint, "Lisa Jones" attempted to get the
minor female to converse with adult males and set up meetings.  "Lisa Jones" convinced
the minor female to cut herself and hide the cuts from her parents.  "Lisa Jones" also
wrote to the minor female about sexual acts.

7.      Investigators traced the "Lisa Jones" online account to HUFFERD.  In
March 2008, HUFFERD was living in VA housing in Lakewood, Washington.  That
same month, investigators obtained a search warrant for HUFFERD's computer.  During
the subsequent search of HUFFERD's computer, investigators found over 300 images
and 9 videos that child pornography[1], or depictions of minors engaged in sexually explicit
conduct.

8.      On July 23, 2008, HUFFERD was arrested based on the aforementioned
complaint and charged in the Western District of Washington with Possession of Child
Pornography.  On February 18, 2009, HUFFERD pleaded guilty one count of Possession

---

[1] For purposes of this Affidavit, I use the definition of child pornography found at 18 U.S.C. § 2256(8), which is, in
summary, a visual depiction of sexually explicit conduct the production of which involves the use of a minor.

Affidavit of SA Graeff
USAO #2018R00299

3

of Child Pornography in violation of Title 18, United States Code Sections 2252A(a)(5)(B) and 2252A(b)(2). In the Plea Agreement, HUFFERD admitted that he possessed more than 300 images and 9 videos of child pornography. On May 14, 2009, the Honorable Judge Ronald B. Leighton sentenced HUFFERD to 120 months' imprisonment and 20 years' supervised release.

### B.    HUFFERD's conduct on Supervised Release

9.    HUFFERD was released to a halfway house, under BOP supervision, on October 14, 2016. HUFFERD's term of supervised release commenced on April 7, 2017, in the Western District of Washington. According to the judgment in the 2008 case, HUFFERD was subject to several special conditions of supervised release, including, but not limited to:

A) a requirement that HUFFERD submit his person, residence, and property to search by the probation office;

B) a requirement that HUFFERD shall not possess any material that depicts sexually explicit conduct;

C) a requirement that HUFFERD have not direct or indirect contact with children under the age of 18; and

D) a requirement that the probation office monitor HUFFERD's computers and electronic media.

10.    For the past several months, HUFFERD has been supervised by United States Probation Officer (USPO) Sarah Cavendish. HUFFERD has resided in a Seattle halfway house that provided housing for sex offenders. In November 2017, USPO Cavendish received information that HUFFERD was in possession of multiple cellular phones with pornography on them. HUFFERD was then ordered to take a polygraph which he passed in December of 2017.

11.    In February 2018, USPO Cavendish received a report that HUFFERD was viewing pornography on a television. On March 9, 2018, HUFFERD's room at the Seattle halfway house was searched by the USPO. According to USPO Cavendish,

4

HUFFERD admitted to having undisclosed cellular phones along with his previously approved cellular phones. HUFFERD admitted to USPO Cavendish that he had been viewing pornography for the past two months on the undisclosed cellular phones. He admitted daily viewing of pornography. When asked if it was adult or child pornography, HUFFERD stated that he "thinks" all of the pornography viewed was of adults.

12.     HUFFERD further admitted to communicating with minor females through the social media sites Tumblr and Instagram. When asked what type of communication he was having with the minors he responded "everything." According to the Probation Officer written record, HUFFERD then made admissions that the conversations with the minor females were sexual in nature.

13.     The USPO began a review of HUFFERD's cellular phones. On one of the SUBJECT PHONES, another USPO officer showed pictures from a Tumblr social media account to USPO Cavendish; USPO Cavendish believed the pictures contained females who were approximately 13-14 years old. The probation review of the SUBJECT PHONES was stopped in favor of law enforcement review.

14.     During the probation contact, HUFFERD also made statements that "I am fucked and going away for another 20 years." HUFFERD was then arrested on violation of his probation. During his transport to the Tacoma Federal Courthouse, HUFFERD made additional statements that "it's over" and "I am going away for a long time, but I did it to myself."

**C.     Search of HUFFERD'S cellular phones**

15.     On March 16, 2018, the Honorable Brian A. Tsuchida signed a search warrant authorizing the search of the following electronic devices seized from HUFFERD: a Samsung SM-S120L (IMEI 359259076055077), a Samsung SM-S727VL (IMEI 354727083181461), and a Samsung Galaxy (missing identification sticker).

16.     Between approximately March 19, 2018 and March 21, 2018, SA Stajduhar utilized Cellebrite UFED4PC to conduct a logical and file system extraction of the SUBJECT PHONES. Additionally, SA Stajduhar created a verified image of the 128GB

5

MicroSD card contained inside the Samsung SM-5727VL utilizing FTK Imager (details of the extraction are available in the index file created by FTK).

17. SA Stajduhar and SA Graeff conducted reviews of the data retrieved from the cellular phone extraction and MicroSD card image. During these reviews, dozens of pictures of pornography were discovered. Much of the pornography discovered was of young females. Some of the pornography contained images of young females acting as if they were daughters wanting to have sexual encounters with their fathers. SA Graeff discovered approximately 110 images on the Samsung SM-S727VL, in which young females were naked, and/or posing in sexually provocative ways. Further investigation is needed to conclusively determine their age.

18. Agents also viewed Instagram screenshots that HUFFERD apparently saved to his phone. These saved screenshots include photographs of (clothed) young girls. I believe that some of these screenshots were saved from Instagram because there is the Instagram camera logo saved as part of the picture.

19. SA Stajduhar and SA Graeff also found SMS messages between HUFFERD and a contact with the initials "T.B." In a text message from January 16, 2018, HUFFERD asks "How's your new school anyway?" T.B. responds "I mean there's like 46 people in the whole school." Then on January 17, 2018, HUFFERD sends a text "OK, I'm looking forward to talking to you again, I love you". T.B. responds "Awh I love you too". On January 21, 2018, HUFFERD asks "Any idea when we are going to get to talk on the phone again?" T.B. responds "My dads been around a lot lately and I don't want to risk anything." On March 22, 2018, SA Stajduhar subpoenaed subscriber information of cellular number associated with T.B. to Verizon wireless. Verizon informed SA Stajduhar that the cellular phone was a trac phone with no subscriber information available.

20. SA Stajduhar and SA Graeff also found intimate and familiar communications between HUFFERD and a female named "B." Agents estimate, based on her physical appearance, that "B" was approximately 20 years old. "B" sent

6

HUFFERD pictures of herself, including topless picture and pictures with "B" posing with a series of stuffed animals.

### D.   HUFFERD's use of the SUBJECT ACCOUNTS

#### 1. The SUBJECT ACCOUNTS on HUFFERD's phone

21.     In April 2016, SA Stajduhar reviewed the applications present on the Samsung SM-5727VL phone and saw that Snapchat application on the phone with the user name "walflowersrus." SA Stajduhar's review of this phone showed that HUFFERD used the email account "walflowers.r.us@gmail.com" with the user name of Charlie Smith.

22.     On June 6, 2018, SA Natane Adkins and SA Stajduhar retrieved the same phone from the HSI Seattle Evidence Room to retrieve the username for the Instagram account.  Upon opening the Instagram application on SUBJECT PHONE, SA Adkins and Stajduhar observed the account name "walflowers.r.us" at the top left-hand corner of the main page for the Instagram account.

23.     On June 8, 2018, SA Graeff conducted a manual review of the Samsung SM-5727VL phone and opened the Tumblr application on the phone. SA Graeff observed the username "notsure1989" associated with the Tumblr account application on the phone. On June 12, 2018, SA Graeff reviewed the same phone and observed within the Tumblr application that the account "notsure1989" had an associated vanity name "baby's daddy forever."

24.     On the same date, SA Graeff conducted an open-source search on Google utilizing the search terms, "notsure1989 tumblr" and a hyperlink appeared for the public Tumblr account for "notsure1989."  Upon reviewing the public Tumblr account for "notsure1989", SA Graeff observed in the "posts" section, a video of a young, Caucasian, naked female, masturbating with a hairbrush.  The age of this young, female is undetermined.  A comment was posted under this video by notsure1989, "Fuck, I wish I was that hairbrush... very sexy".  Below the video on the posts section, SA Graeff observed a moving photograph or very short segment of a video, commonly known as an

7

animated Graphics Interchange Format ("GIF"), of a young, Caucasian female. Below
the "GIF", SA Graeff observed a comment posted by the account user for "notsure1989",
"So sexy,beautiful eyes, would love to fill her mouth with my cum". Additionally on the
postings section, SA Graeff observed the posting "REBLOG IF YOU THINK THERE IS
NOTHING WRONG WITH AN AGE GAP IN A RELATIONSHIP!!" Below this
posting, the account user "twotallz" wrote, "Absolutely nothing wrong with it", and the
account user ntosure1989 wrote, "Nothing wrong at all." SA Graeff observed multiple
other videos on the post sections in which young females were in engaged in
masturbation and/or sexual acts with sex toys. The exact ages of these young females is
undetermined.

### 2.     HUFFERD used the SUBJECT ACCOUNTS to communicate with minors

25.     A review of the Samsung SM-S727VL recovered from HUFFHERD shows
that he used the SUBJECT ACCOUNTS in connection with his sexual attraction to minor
females. As discussed above, HUFFERD admitted to the Probation Office that he
communicated with minor females through Tumblr and Instagram. When asked what
type of communication he was having with the minors he responded "everything."
According to the Probation Officer written record, HUFFERD then made admissions that
the conversations with the minor females were sexual in nature. Further, a USPO officer
showed pictures from a Tumblr account on one of HUFFERD's phones to USPO
Cavendish; USPO Cavendish believed the pictures contained females who were
approximately 13-14 years old.

26.     HUFFERD also used some of the SUBJECT ACCOUNTS in conversations
with a suspected 15-year-old female. Review of the cellular phone shows that
HUFFERD used Gmail for conversations with this suspected minor, and further review
of these Gmail conversations show that HUFFERD and the 15-year-old communicated
via Snapchat and Instagram services.

Affidavit of SA Graeff
USAO #2018R00299

27.     Contained in the email stored on the cellular phone was an exchange, dated between October 27, 2017 and October 29, 2017, with an email address listed as belonging to a "JT." According to the content of the conversation, at the time of the email conversations, JT was 15 years old. Moreover, JT's contact information, specifically, her email address, is affiliated with an all-girls high school in New Zealand and internet review confirmed the email address for "JT" is consistent with the contact email address for the school.

28.     The following is an excerpt of this email conversation between the Gmail account used by HUFFERD and JT (this is not a complete record of the conversation) wherein HUFFERD discusses using Instagram or Snapchat to communicate with JT:

**Charlie Smith <walflowers.r.us@gmail.com>**: Why can't you get on insta or snap?  I'm missing you

**JT**: dad has my phone, i asked for it yesterday morning but i wasnt allowed it :(

**Charlie Smith <walflowers.r.us@gmail.com>**: Where's your phone?  Why does your mum take it every freaking weekend?  This is stupid.  You need a phone you can start and just use on wi-fi. Do you have "throw away" "pay as you go"  no contract phones there?  Let me know  how much one costs and where to order it from....im tired of this.

**JT**: because they have no life. im not even allowed in town with my friend

**JT**: i love you too, im sorry our relationship hasnt gotten off to a great start. i feel so bad

29.     Further in the conversation, JT described her age as 15:

**JT**: this is why i cant wait till im 16.. i can move out.. i can do whatever the hell i want... she wont be able to say what i can and cant do

**Charlie Smith <walflowers.r.us@gmail.com>**: Move out?  To where?  A day under 18 here and i go to prison.... as much as i would love to have you here, i cant yet

**JT**: il find somewhere lol

9

**JT:** of what

**Charlie Smith <walflowers.r.us@gmail.com>:** I asked where you would love to, you said you'd find a place... I said that's what I'm afraid of....living at home is a pain in the ass, but it's safe and it's cheap. How are you going to afford your private school and living expenses and still plan to come here in 2 1/2 years

30.     Later in the conversation, HUFFERD's emails indicated that he had communicated with JT on Instagram ("insta") and Snapchat ("snap") in the past. HUFFERD further wrote that he would be "toast" if others saw those conversations and that he could go to jail for talking to JT:

**Charlie Smith <walflowers.r.us@gmail.com>:** That doesn't explain why she keeps taking your phone. All it takes is them looking on your snap or Insta once and I'm toast

Please help me understand WHY she takes it. Because she's strict doesn't cover THIS, my parents were strict, but this is extreme. You can't have your phone but you can drink burbon... it doesn't match up

**JT:** she doesnt like me having a boyfriend okay, both of my parents dont. it doesnt matter who ive been with, theyve never been happy for me. i dont want to lose you, you mean too much to me

**Charlie Smith <walflowers.r.us@gmail.com>:** How do they know you have a boyfriend?

**Charlie Smith <walflowers.r.us@gmail.com>:** There are just so many things that aren't making sense.... they don't like you having a boyfriend... ok, how do they know you have a boyfriend?

It's like I'm getting little pieces of information from you at a time. And then, only if I ask directly them you answer with as little info as possible, never volunteering anything that want asked. So I'm asking you directly....

What is going on? Why do your parents think you have a boyfriend? They can not know about me, not even suspect I exist. Do you understand I could go to

10

prison for even talking to you?  Maybe not there, but here, that's 10-20 years in prison.  It's THAT serious.  Maybe you didn't grasp that before.  So if I'm risking my life, in essence, to talk to you, because I love you.  I really need straight and complete answers.  I can't do this with 3 or 4 word answers any more.  This isn't just occasionally they take your phone, this is they have your phone more often than not.  I need to know EVERYTHING, including history.... have they done this before?  If you knew they do this, why would you let them know you have a boyfriend,  and more importantly,  why didn't you tell me?

I'm not leaving you, I love you!  I'm just at the point where I need real and complete answers.  Please,  I think I deserve at least that much.

I LOVE YOU BABY GIRL.

31.     On or about April 4, 2018, SA Stajduhar submitted preservation request letters to Google, Snapchat, and Facebook/Instagram, for the preservation of accounts and information associated with the SUBJECT ACCOUNTS.

32.     On approximately March 30, 2018, SA Stajduhar submitted a preservation request letter to Tumblr.com, for the preservation of the Tumblr account associated with the email address "walflowers.r.us@gmail.com."  Tumblr.com later contacted SA Stajduhar and advised that Tumblr.com had no account/user associated with the email address "walflowers.r.us@gmail.com."  Also on June 8, 2018, SA Graeff submitted a preservation request to Tumblr.com for the account/username "notsure1989."

### TECHNICAL BACKGROUND

33.     **Google.**  I have learned that Google provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public.  Google allows subscribers to obtain e-mail accounts at the domain name "gmail.com," like the e-mail accounts listed in Attachment A.

34.     Subscribers obtain an account by registering with Google.  When doing so, e-mail providers like Google ask the subscriber to provide certain personal identifying information.  This information can include the subscriber's full name, physical address,

11

telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users, and to help establish who has dominion and control over the account.

35.     E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account, which can help establish the individual or individuals who had dominion and control over the account

36.     In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google's servers for a certain period of time.

37.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google often maintains a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google server, the e-mail can remain on the system indefinitely. Even if the sender deletes the e-mail, it may continue to be available on Google's servers for a certain period of time.

12

38.   A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Google but may not include all of these categories of data.

39.   A Google subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, photographs, and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, attachments to e-mails, including photographs and files, and photographs and files stored in relation to the account.

40.   A subscriber to a Google Gmail account can also store files, including address books, contact lists, calendar data, photographs and other files, on servers maintained and/or owned by Google. For example, Google offers users a calendar service that users may utilize to organize their schedule and share events with others. Google also offers users' a service called Google Drive that may be used to store data and documents. The Google Drive service may be used to store documents including spreadsheets, written documents (such as Word or Word Perfect) and other documents that could be used to manage a website. Google Drive allows users to share their documents with others or the public depending on the settings selected by the account holder. Google also provides its users with access to the photo storage service "Google + Photos," formerly known as Picasa. Google + Photos can be used to create photo albums, store photographs, and share photographs with others. Another Google service called "You Tube" allows users to view, store and share videos. Google also provides a service called "Google Analytics." Google Analytics is a Google service that monitors website traffic and provides subscribers with data relating to how much traffic is visiting the subscriber's website, which sections of the subscriber's website users are visiting, how long users are staying on particular sections of the site, and the geographical source

13

of users visiting the website, among other things. Another Google service called "Google Hangouts" is a communication platform which includes instant messaging, video chat, short message service (SMS) and voice over internet protocols (VOIP) features.

41.     In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

42.     **Instagram.** I have learned that Instagram is a photograph and video-sharing networking service in which users can share photographs and videos in a public or private forum. Instagram users can also transmit photographs and videos to other users through private messages within the Instagram service.

43.     Instagram is an online social networking application made for photo-sharing that enables its users to take pictures and share them either publicly or privately on the app, as well as through a variety of other social networking platforms, such as Facebook, Twitter, Tumblr, and Flickr. In August 2015, a new version of Instagram was developed which allows users to upload media captured in any aspect ratio. Users can also apply digital filters to their images and videos. Instagram was acquired by Facebook in April 2012.

44.     Every user who creates an Instagram account has a profile and news feed. When a user posts a photo or video on Instagram, it will be displayed on the user's profile. A user profile may be customized to include the user's name, photo, short biography and a website link, if the user has one. Users who "follow" you will see your posts in their own feed. Likewise, you will see posts from the users whom you follow on your news feed. A user profile can be set to public or private. If a user account is public,

14

anyone can find and view the user's profile along with all the photos and videos they post.

45.   A user can interact with other users on Instagram by following them, being followed by them, commenting on the other user's posts, liking and/or tagging another user's posts, and by exchanging private messages with other users. Additionally, a user can save photos they see on Instagram.

46.   **Snapchat.** I have learned that Snapchat is a multimedia messaging application in which users can send photographs and videos to other users. The photograph or video will display for a limited amount of time to the recipient. The recipient can then opt to view the photograph or video a second time, and after this second viewing, the recipient cannot view the photograph or video again on the Snapchat application, and the photograph or video is deleted. From my training and experience I know that Snapchat maintains user data, to include photographs or videos on their servers, sometimes for one to three months, even though users are unable to access previously viewed photographs and videos.

47.   The Snapchat Law Enforcement Guide, published by Snapchat, Inc., and last updated April 28, 2018, states that "Snapchat is a mobile application made by Snap Inc. and available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, video, and text." The Guide also lists some of the information that is or may be available by way of valid process served on Snap Inc. According to Snap Inc., this information includes, but is not limited to:

A.   Subscriber Information: to include Snapchat username, E-mail address, phone number, Snapchat user vanity name, Snapchat account creation date and IP address, timestamp and IP address of account logins and logouts.

B.   Logs of Previous Snaps, Stories, and Chats: for a defined amount of time the snaps sent and received, to include meta-data about the Snaps, Stories, and Chats, but not the content.

C.   Content: In certain limited circumstances, content of sent Snaps and chat content may be available. Memories content may be available until deleted by user.

15

48.   The Law Enforcement Guide defines the Snapchat features as follows:

A.   **Snaps**: A user takes a photo or video using their camera phone in realtime and then selects which of their friends to send the message to. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

B.   **Stories**: A user can add photo or video Snaps to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories.

C.   **Memories**: Memories is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

D.   **Chat**: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties - and both parties swipe away from the Chat screen - the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

49.   **Tumblr.** I have learned that Tumblr is a microblogging and social networking website founded in 2007. The service allows users to post multimedia and other content to a short-form blog. Users can follow other users' blogs. Bloggers can also make their blogs private. For bloggers many of the website's features are accessed from a "dashboard" interface. Tumblr blogs may optionally allow users to submit questions, either as themselves or anonymously, to the blog for a response. Tumblr also offered a "fan mail" function, allowing users to send messages to blogs that they follow.

50.   On November 10, 2015, Tumblr introduced an integrated instant messaging function, allowing users to chat between other Tumblr users. The feature was rolled out in a "viral" manner; it was initially made available to a group of 1500 users, and other users could receive access to the messaging system if they were sent a message by any

16

user that had received access to the system itself. The messaging platform replaces the fan mail system, which was deprecated. The ability to send posts to others via the Dashboard was added the following month.

51.     The Tumblr Law Enforcement Guidelines defines Tumblr as a media network that allows users to create, post, share, and follow the digital media that they love. The Guidelines state that Tumblr is an open platform and most Tumblr information is posted publicly, so you can usually view Tumblr blog posts, likes, and reblogs by simply visiting the appropriate Tumblr blog or tag page. You do not need a Tumblr account in order to view content posted publicly. Tumblr also collects and stores non-public user information in accordance with its Terms of Service.

52.     Analysis conducted by news and technology site TechCrunch has shown that over 22% of all traffic in and out of Tumblr is classified as pornography. In addition, a reported 16.45% of blogs on Tumblr exclusively contain porn. Tumblr's Community Guidelines permits adult-oriented content but requires that blogs that contain occasional or substantial adult content to be flagged as such. Sexually explicit videos are not allowed to be uploaded to the website, but videos hosted elsewhere may be embedded. Further, Tumblr's Law Enforcement Guidelines state that Tumblr reports any apparent instances of child exploitation it discovers to the National Center for Missing and Exploited Children (NCMEC).

## PAST EFFORTS TO OBTAIN THIS EVIDENCE

56.     As discussed herein, some evidence was available on devices seized as part of this investigation. However, additional content and records are likely in the custody or control of the SUBJECT ACCOUNTS, because I believe that these services have the ability to store additional communications and images that were not stored on HUFFERD's cellular phone(s). In addition, SA Stajduhar sent preservation letters to the SUBJECT ACCOUNTS that requested the preservation of all account content and communications.

//

17

## BACKGROUND RELEVANT TO CHILD EXPLOITATION INVESTIGATIONS

57.     Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals who have a sexualized interest in children and depictions of children:

a.     They may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.     They may collect sexually explicit or suggestive materials in a variety of media. Such individuals often times use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts. These individuals may keep records, to include names, contact information, and/or dates of these interactions, of the children they have attempted to seduce, arouse, or with whom they have engaged in the desired sexual acts.

c.     They often maintain any "hard copies" of child pornographic material that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain these "hard copies" of child pornographic material for many years, as they are highly valued.

d.     Likewise, they often maintain their child pornography collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, often at the individual's residence or some otherwise easily accessible location, to enable the owner to view the collection, which is valued highly. They also may opt to store the contraband in cloud accounts. Cloud storage is a model of data storage where the digital data is stored in logical pools, the physical storage can span

18

multiple servers, and often locations, and the physical environment is typically owned and managed by a hosting company. Cloud storage allows the offender ready access to the material from any device that has an Internet connection, worldwide, while also attempting to obfuscate or limit the criminality of possession as the material is stored remotely and not on the offender's device.

e.      They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.      They generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.      E-mail itself provides a convenient means by which individuals can access a collection of child pornography from any computer, at any location with Internet access. Such individuals therefore do not need to physically carry their collections with them but rather can access them electronically. Furthermore, these collections can be stored on email "cloud" servers, which allow users to store a large amount of material at no cost, without leaving any physical evidence on the users' computer(s).

58.     Given the above, including the criminal history of PETER JAMES HUFFERD, his prior contacts with minor females, his concern about going to prison in conversations with the suspected 15-year-old, and his statements when confronted by the USPO, and based on my knowledge, training and experience, along with my discussions with other law enforcement officers who investigate child exploitation crimes, I believe that HUFFERD likely has a sexualized interest in children and depictions of children. I therefore believe that evidence of child pornography, and/or evidence of child enticement, is likely to be found in the SUBJECT ACCOUNTS.

19

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

59.     Pursuant to Title 18, United States Code, Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Google, Instagram, Snapchat, and Tumblr, and their representatives and employees, to assist agents in the execution of these warrants.  Once issued, the search warrants will be presented to Google, Instagram, Snapchat, Tumblr with direction that each company identify the accounts described in the specific Attachment A associated with their respective SUBJECT ACCOUNT (e.g, Attachment A-1 is for the Gmail SUBJECT ACCOUNT), as well as other subscriber and log records associated with the SUBJECT ACCOUNTS, as set forth in the specific Attachment B (Attachment B-1 is for the Gmail SUBJECT ACCOUNT).

60.     The search warrants will direct Google, Instagram, Snapchat, and Tumblr, to create an exact copy of the specified accounts and records.

61.     I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to the applicable Attachment B, for seizure.

62.     Analyzing the data contained in the forensic image may require special technical skills, equipment, and software.  It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common e-mail, database and spreadsheet applications do not store data as searchable text.  The data may be saved, instead, in proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well.  Consistent with the foregoing,

20

searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.  All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

63.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of messenger communications, chat logs, files, payment records and documents, that identify any users of the subject account and communications sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications.

//

//

21

## CONCLUSION

64.     Based on the foregoing, I request that the Court issue the proposed search warrants. This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Accordingly, by this Affidavit and Warrant I seek authority for the government to search all of the items specified in Section I of Attachments B-1, B-2, B-3, and B-4 (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to those same Attachments.

Presented electronically pursuant to Local Criminal Rule CrR 41(d)(3).

Dated this 13ᵗʰ day of June, 2018.

JASON R. GRAEFF, Affiant
Special Agent, HSI

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 14ᵗʰ day of June, 2018.

BRIAN A. TSUCHIDA
United States Magistrate Judge

22

## ATTACHMENT A-1

### SUBJECT ACCOUNT to be Searched

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with the Google account "walflowers.r.us@gmail.com", as well as all other subscriber and log records associated with the account, which is stored at premises owned, maintained, controlled, or operated by Google Inc., an electronic communications services and remote computing services provider located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## ATTACHMENT A-2

## SUBJECT ACCOUNT to be Searched

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with Instagram, LLC account "walflowers.r.us" as well as all other subscriber and log records associated with the account, which are located at premises owned, maintained, controlled or operated by Instagram, LLC, a social media application provider located at 1601 Willow Road, Menlo Park, California, 94025.

## ATTACHMENT A-3

## SUBJECT ACCOUNT to be Searched

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with Snapchat account "walflowersrus" as well as all other subscriber and log records associated with the account, which are located at premises owned, maintained, controlled or operated by Snapchat, located at 63 Market Street, Venice, California, 90291.

**ATTACHMENT A-4**

**SUBJECT ACCOUNT to be Searched**

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with Tumblr account "notsure1989" as well as all other subscriber and log records associated with the account, which are located at premises owned, maintained, controlled or operated by Tumblr, located at 35 East 21st Street, Ground Floor, New York, NY 10010.

Attachment A-4
USAO#2018R00299

**ATTACHMENT B-1**

I.  **Section I - Information to be disclosed by Google for search:**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of Google, including any emails, records, files, logs, or information that has been deleted but is still available to Google.   Google is required to disclose the following information to the government for each account or identifier listed in Attachment A-1:

a.  The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email, and any attachments to such emails;

b.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.  The types of service utilized;

d.  All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, instant messages, and instant messenger contact information, calendar data, pictures, and files.

e.  All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

II.  **Section II - Information to be seized by the government**

All information described above in Section I that constitutes contraband, evidence, fruits, or instrumentalities of the following crimes committed on or after October 14, 2016: 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18

U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), 18 U.S.C. § § 2251(a),

2251(c)) (Production of Child Pornography/Sexual Exploitation of Children), and 18

U.S.C. § 2422(b) (Attempted Enticement of a Minor).

      a.     All messages, documents, and profile information, attachments, or
other data that serves to identify any persons who use or access the account specified, or
who exercise in any way any dominion or control over the specified account

      b.     Any address lists or "friend"/contact lists associated with the
specified account;

      c.     All visual depictions of minors, including those involving minors
engaged in sexually explicit conduct and any profile information from other file- or
photo-sharing websites;

      d.     Any messages, communications, or documents relating to the
possession, transmission or creation of visual depictions of minors engaged in sexually
explicit conduct or the sexual exploitation or enticement of minors (including any
attachments thereto);

      e.     All subscriber records associated with the specified account,
including name, address, local and long distance telephone connection records, or records
of session times and durations, length of service (including start date) and types of
service utilized, telephone or instrument number or other subscriber number or identity,
including any temporarily assigned network address, and means and source of payment
for such service) including any credit card or bank account number;

      f.     Any and all other log records, including IP address captures,
associated with the specified account; and

      g.     Any records of communications between Google and any person
about issues relating to the account, such as technical problems, billing inquiries, or
complaints from other users about the specified account. This to include records of
contacts between the subscriber and the provider's support services, as well as records of
any actions taken by the provider or subscriber as a result of the communications.

**Notwithstanding the criminal offenses defined under 18 U.S.C. § 2252 and 2252A or
any similar criminal offense, Google shall disclose information responsive to this
warrant by mailing it to Homeland Security Investigations, Attn: Special Agent
Jason Graeff at 1000 Second Ave, Suite 2300, Seattle, WA 98104 or via email to
Jason.R.Graeff@ice.dhs.gov.**

## ATTACHMENT B-2

**I.      Section I - Information to be disclosed by Instagram, LLC for search:**

To the extent that the information described in Attachment A-2 is within the

possession, custody, or control of Instagram LLC, including any communications,

records, files, logs, posts, payment records, or information that has been deleted but is

still available to Instagram, LLC, or has been preserved pursuant to requests made under

18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to

the government for the SUBJECT ACCOUNT identifier listed in Attachment A-2:

a.      The contents of all communications associated with the account,
including stored or preserved copies of content sent to and from the account, draft
communications, saved posts, the source and destination of any communications, and the
date and time at which the communications were sent;

b.      All records or other information regarding the identification of the
account, to include full name, physical address, telephone numbers and other identifiers,
records of session times and durations, the date on which the account was created, the
length of service, the IP address used to register the account, log-in IP addresses
associated with session times and dates, account status, alternative email addresses
provided during registration, methods of connecting, log files, and means and source of
payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual
using the account, including address books, contact and buddy lists, calendar data,
pictures, and files;

e.      All records pertaining to communications between Instagram, LLC
and any person regarding the account, including contacts with support services and
records of actions taken.

**II.     Section II - Information to be seized by the government**

All information described above in Section I that constitutes contraband, evidence,

fruits, or instrumentalities of the following crimes committed on or after October 14,

2016: 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18

U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), 18 U.S.C. § § 2251(a),

2251(c)) (Production of Child Pornography/Sexual Exploitation of Children), and 18

U.S.C. § 2422(b) (Attempted Enticement of a Minor).

     a.    All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account

     b.    Any address lists or "friend"/contact lists associated with the specified account;

     c.    All visual depictions of minors, including those involving minors engaged in sexually explicit conduct and any profile information from other file- or photo-sharing websites;

     d.    Any messages, communications, or documents relating to the possession, transmission or creation of visual depictions of minors engaged in sexually explicit conduct or the sexual exploitation or enticement of minors (including any attachments thereto);

     e.    All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service) including any credit card or bank account number;

     f.    Any and all other log records, including IP address captures, associated with the specified account; and

     g.    Any records of communications between Instagram, LLC and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

**Notwithstanding the criminal offenses defined under 18 U.S.C. § 2252 and 2252A or any similar criminal offense, Instagram, LLC shall disclose information responsive to this warrant by mailing it to Homeland Security Investigations, Attn: Special Agent Jason Graeff at 1000 Second Ave, Suite 2300, Seattle, WA 98104 or via email to Jason.R.Graeff@ice.dhs.gov.**

## ATTACHMENT B-3

I.     **Section I - Information to be disclosed by Snapchat for search:**

To the extent that the information described in Attachment A-3 is within the possession, custody, or control of Snapchat, including any communications, records, files, logs, posts, payment records, or information that has been deleted but is still available to Snapchat, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Snapchat is required to disclose the following information to the government for the SUBJECT ACCOUNT identifier listed in Attachment A-3:

a.     The contents of all communications associated with the account, including all stored Snaps, Stories, Memories, and Chats, and including stored or preserved copies of content sent to and from the account, draft communications, saved posts, the source and destination of any communications, and the date and time at which the communications were sent;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.     All records pertaining to communications between Snapchat and any person regarding the account, including contacts with support services and records of actions taken.

II.    **Section II - Information to be seized by the government**

All information described above in Section I that constitutes contraband, evidence, fruits, or instrumentalities of the following crimes committed on or after October 14,

2016: 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18

U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), 18 U.S.C. § § 2251(a),

2251(c)) (Production of Child Pornography/Sexual Exploitation of Children), and 18

U.S.C. § 2422(b) (Attempted Enticement of a Minor).

      a.     All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account

      b.     Any address lists or "friend"/contact lists associated with the specified account;

      c.     All visual depictions of minors, including those involving minors engaged in sexually explicit conduct and any profile information from other file- or photo-sharing websites;

      d.     Any messages, communications, or documents relating to the possession, transmission or creation of visual depictions of minors engaged in sexually explicit conduct or the sexual exploitation or enticement of minors (including any attachments thereto);

      e.     All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service) including any credit card or bank account number;

      f.     Any and all other log records, including IP address captures, associated with the specified account; and

      g.     Any records of communications between Snapchat and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account. This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

**Notwithstanding the criminal offenses defined under 18 U.S.C. § 2252 and 2252A or any similar criminal offense, Snapchat shall disclose information responsive to this warrant by mailing it to Homeland Security Investigations, Attn: Special Agent Jason Graeff at 1000 Second Ave, Suite 2300, Seattle, WA 98104 or via email to Jason.R.Graeff@ice.dhs.gov.**

**ATTACHMENT B-4**

I.  **Section I - Information to be disclosed by Tumblr for search:**

To the extent that the information described in Attachment A-4 is within the possession, custody, or control of Tumblr, including any communications, records, files, logs, posts, payment records, or information that has been deleted but is still available to Tumblr, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Tumblr is required to disclose the following information to the government for the SUBJECT ACCOUNT identifier listed in Attachment A-4:

      a.    The contents of all communications associated with the account, including stored or preserved copies of content sent to and from the account, draft communications, saved posts, the source and destination of any communications, and the date and time at which the communications were sent;

      b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

      c.    The types of service utilized;

      d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

      e.    All records pertaining to communications between Tumblr and any person regarding the account, including contacts with support services and records of actions taken.

II.  **Section II - Information to be seized by the government**

All information described above in Section I that constitutes contraband, evidence, fruits, or instrumentalities of the following crimes committed on or after October 14, 2016: 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18

U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), 18 U.S.C. § § 2251(a),

2251(c)) (Production of Child Pornography/Sexual Exploitation of Children), and 18

U.S.C. § 2422(b) (Attempted Enticement of a Minor).

      a.    All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account

      b.    Any address lists or "friend"/contact lists associated with the specified account;

      c.    All visual depictions of minors, including those involving minors engaged in sexually explicit conduct and any profile information from other file- or photo-sharing websites;

      d.    Any messages, communications, or documents relating to the possession, transmission or creation of visual depictions of minors engaged in sexually explicit conduct or the sexual exploitation or enticement of minors (including any attachments thereto);

      e.    All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service) including any credit card or bank account number;

      f.    Any and all other log records, including IP address captures, associated with the specified account; and

      g.    Any records of communications between Tumblr and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account. This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

**Notwithstanding the criminal offenses defined under 18 U.S.C. § 2252 and 2252A or any similar criminal offense, Tumblr shall disclose information responsive to this warrant by mailing it to Homeland Security Investigations, Attn: Special Agent Jason Graeff at 1000 Second Ave, Suite 2300, Seattle, WA 98104 or via email to Jason.R.Graeff@ice.dhs.gov.**